*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES S. POSTEMA,

Defendant-Appellant.

UNPUBLISHED
July 23, 2020

No. 347552
Ingham Circuit Court
LC No. 17-000103-FH

Before: METER, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of unlicensed gambling operations, MCL 432.218(1)(a), and use of computers to commit a crime, MCL 752.796; MCL 752.797(3)(e). Defendant was sentenced to one year imprisonment and five years' probation. We affirm.

## I. FACTUAL BACKGROUND

Defendant owned and operated Triple Cherries Internet Café (the café). Defendant testified that customers rented computers at the café and paid money solely for time on the computer. Free "sweepstakes points"[1] were automatically given to a customer when they rented a computer. Sweepstake points were used to play sweepstakes games on the computers. Customers had the option to either be paid money for winning the sweepstakes games or buy additional computer rental time; however, defendant testified that the computer time was only used when a customer was accessing the Internet. Customers could also play the sweepstakes games off-site without reducing the amount of computer time they purchased.

The Michigan Gaming Control Board (MGCB) conducted an investigation of the café. MGCB Regulation Officer John Schaufler set up an account at the café and received sweepstake entries after purchasing Internet time. Schaufler testified that he played the café's computer games and opted to receive cash for his winnings. Schaufler also testified that he had the option to

---

[1] The sweepstake points were also referred to as "entries" and "credits."

purchase additional Internet time with his winnings, which would give him more sweepstakes entries. Schaufler played the sweepstake games approximately seven times during the course of his investigation.

Two former customers testified that they played the sweepstake games and were paid winnings in cash. Former café employee Sharaya Flater testified that customers came to the café to play the games on the computer and win money. Flater explained that customers received a card after they set up an account and that the customer would give her cash and she would add the amount of cash onto the customer's card. The customer then swiped the card on their computer. Flater testified that the customers could not play the games without adding money to the computer.

At trial, John Lessnau, manager of the MGCB's criminal investigation section, testified as an expert in illegal gaming operations. Lessnau testified that to operate a legal sweepstakes, the sweepstakes had to be designed to promote a primary business and could not operate 365 days a year. Another requirement of sweepstakes was publication of a beginning and an end date in a location where customers could see the dates.

Lessnau stated that he analyzed information from café computers and determined that the customers went to the café to play the sweepstake games. Lessnau testified that the café sweepstakes was an illegal gambling operation. Additionally, Lessnau stated that the statutory elements of gambling were (1) consideration, (2) chance, and (3) a prize, and that a sign in the café window established the elements. Further, Lessnau opined that the element of consideration was established because customers received sweepstake entries or "credits" each time they purchased computer time.

## II. EXPERT OPINION TESTIMONY

Defendant first argues that the trial court erred in admitting Lessnau's improper expert testimony regarding the elements of gambling. We disagree.

Defendant argues that the trial court erred by allowing Lessnau to testify that defendant was guilty of operating an unlicensed gaming operation. Defendant failed to object to the testimony at trial; therefore, this issue is unpreserved. See *People v Brown*, 326 Mich App 185, 191; 926 NW2d 879 (2018) (quotation marks and citation omitted) ("In order to preserve the issue of the improper admission of evidence for appeal, a party generally must object at the time of admission."). Evidentiary errors are nonconstitutional errors. *People v Herndon*, 246 Mich App 371, 402 n 71; 633 NW2d 376 (2001). Unpreserved nonconstitional claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 587 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* An error affects substantial rights when "the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "An error is outcome determinative if it undermined the reliability of the verdict[.]" *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). The defendant bears the burden to demonstrate that the error affected his substantial rights. *Carines*, 460 Mich

at 763. See also MCR 2.613 (providing that an error in admitting evidence does not require reversal unless the failure to grant relief would be inconsistent with substantial justice).

MRE 702 governs the admissibility of expert-witness testimony. "An expert may offer an opinion at trial if his or her testimony 'is based on sufficient facts or data,' if the testimony 'is the product of reliable principles and methods,' and if the witness 'has applied the principles and methods reliably to the facts of the case.' " *People v McFarlane*, 325 Mich App 507, 518; 926 NW2d 339 (2018), quoting MRE 702. An expert's opinion testimony is not "objectionable merely because 'it embraces an ultimate issue to be decided by the trier of fact.' " *McFarlane*, 325 Mich App at 519, quoting MRE 704. Nevertheless, there are limits on an expert witness's opinion testimony. An expert witness may not "express[] an opinion regarding the defendant's guilt or whether the defendant had a culpable state of mind," *McFarlane*, 325 Mich App at 523, or "testify about the requirements of law which apply to the particular facts in the case or to phrase his opinion in terms of a legal conclusion," *People v Drossart*, 99 Mich App 66, 75; 297 NW2d 863 (1980).

Lessnau's opinion testimony regarding his interpretation of the elements of the illegal gambling operation statute was improper. This Court has held that it is improper for experts to provide legal definitions to the jury because such testimony invades the trial court's role and may confuse the jury. See *People v Caulley*, 197 Mich App 177, 193-194; 494 NW2d 853 (1992) (stating that the expert's testimony regarding what was required by law to establish insanity invaded the role of the court).

Lessnau's opinion testimony regarding the legality of the café was also improper because he expressed an opinion relating to defendant's guilt. *McFarlane*, 325 Mich App at 523. It was for the jury alone to decide whether the evidence established that the café was an unlicensed gambling operation. Therefore, permitting Lessnau to interpret his own testimony regarding whether defendant was operating an illegal gambling operation was improper and clear error.

However, even when this Court determines that an error has occurred,

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on . . . the improper admission or rejection of evidence . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. [MCL 769.26.]

Likewise, "[a]n error in the admission or the exclusion of evidence . . . is not ground[s] for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.6613(A). "Application of these provisions, as developed in this Court's harmless error jurisprudence, requires error to be classified as constitutional or nonconstitutional and as preserved or unpreserved." *People v Cornell*, 466 Mich 335, 363; 646 NW2d 127 (2002). As stated above, the error in this case is an unpreserved nonconstitutional error, and will not be reversed unless the error "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Callon*, 256 Mich App at 329.

Here, defendant cannot establish that Lessnau's testimony resulted in a miscarriage of justice because the jury heard overwhelming evidence that defendant operated an unlicensed gambling operation and the jury instructions provided an accurate description of the law.

MCL 432.218(1)(a) provides that a person is guilty of a felony for "[c]onducting a gambling operation where wagering is used or to be used without a license issued by the [MGCB]." A gambling operation is "the conduct of authorized gambling games in a casino." MCL 432.202(w). A casino is "a building or buildings in which gaming is conducted." MCL 432.202(g). A gambling game is "any game played with cards, dice, equipment or a machine, including any mechanical, electromechanical or electronic device which shall include computers and cashless wagering systems, for money, credit, or any representative of value . . . ." MCL 432.202(v).

Defendant testified that he did not have a license to operate a gaming facility from the MGCB. There was substantial evidence that the computer games played by café customers met the definition of gambling games. Witness testimony established that the sweepstake games were played on computers for "money, credit, or any representative of value . . . ." MCL 432.202(v). Defendant testified that sweepstakes points were automatically given to a customer after they purchased a computer rental. Defendant also testified that customers could be paid money for winning the sweepstakes. Further, Schaufler and two other former café customers testified that they played the games at the café and won money and were paid their winnings in cash. Flater similarly testified that customers paid money to play the games for a chance to win money. Accordingly, even without Lessnau's testimony, there was sufficient evidence that defendant violated MCL 432.218(1)(a).

Additionally, although the trial court did not provide a curative instruction regarding Lessnau's improper testimony, the trial properly instructed the jury on the elements of an unlicensed gambling operation. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The trial court provided the following jury instruction:

> Defendant is charged with unlicensed gambling operation. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, defendant conducted a gambling operation where wagering was used or was to be used.
>
> Second, defendant did not have a license issued by the [MGCB].
>
> Gambling is defined as an operation where there is consideration, chance, and a prize.

Because there was sufficient evidence independent of Lessnau's testimony for the jury to find each element of unlicensed gambling, defendant cannot show error affecting his substantial rights. *Carines*, 460 Mich at 763. Therefore, any error involving Lessnau's improper opinion testimony was harmless, and defendant's argument fails.

-4-

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he received ineffective assistance of counsel when defense counsel failed to object to Lessnau's inadmissible testimony. We disagree.

A defendant preserves a claim of ineffective assistance of counsel by moving for a new trial or an evidentiary hearing. *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant did not seek a new trial or an evidentiary hearing regarding his ineffective assistance of counsel claim; therefore, this issue is unpreserved, and this Court's review is limited to the facts in the existing record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). Whether a defendant has been deprived of effective assistance of counsel is "a mixed question of law and fact[.]" *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d (2002). Appellate courts review the trial court's factual findings for clear error, while questions of constitutional law are reviewed de novo. *Id*.

To establish a claim of ineffective assistance of counsel, a defendant is required to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. "At issue in a claim of ineffective assistance of counsel is whether counsel's failure to object to the improper evidence was constitutionally deficient, and if so whether that failure prejudiced the defendant." *Id*. at 12. For strategic reasons, counsel may decide not to object to an error. *Id*. "If counsel's strategy is reasonable, then his or her performance was not deficient." *Id.*

"The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). The reviewing court must consider the range of potential reasons counsel may have had for proceeding as he or she did. *Id*. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Therefore, there is "a strong presumption of effective assistance of counsel." *Id*.

"In addition to proving that defense counsel's representation was constitutionally deficient, defendant must show that but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 55-56 (quotation marks and citations omitted). "A defendant may meet this burden even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id*. at 56 (quotation marks and citation omitted). "[W]here there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *Id*. (quotation marks and citations omitted).

Defendant argues that defense counsel provided ineffective assistance of counsel because he failed to object to Lessnau's inadmissible testimony. Although Lessnau improperly opined that defendant operated an illegal gambling operation, defendant has failed to establish that there was a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Randolph*, 502 Mich at 9. As stated earlier, the prosecutor presented overwhelming evidence of defendant's guilt. Even without considering Lessnau's testimony, there was sufficient evidence for the jury to find that defendant operated an unlicensed gambling operation beyond a reasonable doubt. Accordingly, the admission of Lessnau's testimony did not prejudice defendant, and thus, defendant has failed to establish his claim of ineffective assistance of counsel.

Affirmed.

/s/ Patrick M. Meter
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien