*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 29, 2024

v

No. 362485
Missaukee Circuit Court
LC No. 2021-003269-FH

AUSTIN PAYNE DEWITT,

Defendant-Appellant.

Before: M.J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

A jury convicted defendant, Austin Dewitt, of six counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a). Before and at trial, defense counsel stipulated to closing the courtroom and rearranging the witness stand during the complainant's testimony. Dewitt argues that he was denied the effective assistance of counsel because counsel's actions deprived him of his right to a public trial and to confront adverse witnesses. Because Dewitt cannot establish a reasonable probability of a different outcome had the complainant testified in an open courtroom without accommodations, we affirm.

## I. FACTUAL BACKGROUND

This case arose from allegations that Dewitt sexually assaulted the complainant, UH, on several occasions. At the time of the offenses, Dewitt was 22 years old and UH was 14 years old. Before trial, the parties agreed that the court "[would] be closed to the public and that the podium [would] be used for all questioning" during UH's testimony. At trial, the prosecution requested another accommodation—that UH, who was then 15 years old, be moved "to a location not directly in front of" Dewitt during her testimony. The trial court asked defense counsel if Dewitt had any objection to the request, and defense counsel stated that he did not. Consistent with the parties' pretrial stipulation, the court directed the attorneys to ensure that individuals sitting in the back of the courtroom left during UH's testimony. When UH took the witness stand, the trial court explained to the jury that it could close the courtroom under the law because of UH's age. The court adjusted UH's seating arrangements before she testified, and defense counsel confirmed that he was satisfied with UH's location. The courtroom was closed only during UH's testimony.

-1-

UH testified that she began communicating with Dewitt through Snapchat[1] in 2021, and their conversations soon transitioned from casual to "sexual in nature." They later met in person at least four times on a trail near UH's home. During each encounter, Dewitt engaged in various acts of sexual penetration with UH. At trial, UH identified Dewitt and stated that she was confident that Dewitt was the individual with whom she had communicated on Snapchat and met in person. Although Dewitt had an identical twin brother, UH was certain that she could differentiate between the twins because they had different facial features. UH's sister also testified to seeing Dewitt during one of his meet-ups with UH, although she cautioned that she was only "[n]inety percent sure" of her courtroom identification.

The defense presented no witnesses. Defense counsel's closing argument sought to undermine UH's credibility, focusing on inconsistencies in her story, her inability to recall important facts, and the absence of corroborating evidence. As noted, the jury convicted Dewitt of six counts of CSC-III.[2] The trial court sentenced Dewitt to serve 50 to 180 months' imprisonment. This appeal as of right followed.

## II. LEGAL BACKGROUND

Dewitt's claim on appeal is one of ineffective assistance of counsel. The Michigan and United States Constitutions guarantee the assistance of counsel to criminal defendants. Const 1963, art 1, § 20; US Const Am VI. "The right to counsel . . . is the right to the effective assistance of counsel." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (cleaned up). This Court presumes that counsel was effective, and "the defendant bears a heavy burden of proving otherwise." *People v Head,* 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

Intertwined with Dewitt's ineffective-assistance claim is his argument that closing the courtroom violated his right to a public trial and rearranging UH's position on the witness stand violated his right to confront witnesses. "Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a public trial." *People v Davis*, 509 Mich 52, 66; 983 NW2d 325 (2022), citing US Const, Am VI; Const 1963, art 1, § 20. The interests served by the public-trial right are varied but include "(1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury." *People v Vaughn*, 491 Mich 642, 667; 821 NW2d 288 (2012). The public trial right is limited, however, "and

---

[1] Snapchat is a social-media application for cell phones that allows users to send text messages or pictures to the user's registered "friends" that can usually only be viewed within a limited amount of time before disappearing. See *In re JP*, 330 Mich App 1, 3-4; 944 NW2d 422 (2019).

[2] Dewitt was charged with eight counts of CSC-III, but the trial court dismissed two counts after Dewitt moved for a directed verdict.

circumstances may exist that warrant the closure of a courtroom during any stage of a criminal proceeding." *Davis*, 509 Mich at 66. Closure is justified "where the party seeking closure advances an overriding interest that is likely to be prejudiced, the closure is no broader than necessary to protect that interest, the trial court considers reasonable alternatives to closing the proceeding, and the trial court makes findings adequate to support the closure." *People v Veach*, 512 Mich 851, 851 (2023) (cleaned up).

In addition, the United States and Michigan Constitutions guarantee the accused the right to confront the witnesses against him. *People v Jemison*, 505 Mich 352, 360; 952 NW2d 394 (2020), citing US Const, am VI; Const 1963, art 1, § 20. Face-to-face testimony is fundamental to the confrontation right, and that right is "absolute for all 'testimonial' evidence unless a witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *Jemison*, 505 Mich at 361-362, quoting *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). But see *Maryland v Craig*, 497 US 836, 850; 110 S Ct 3157; 111 L Ed 2d 666 (1990) (holding that a defendant's confrontation right is not violated when a witness testifies by one-way video instead of face-to-face, so long as accommodating the witness furthers an important public policy and the testimony is otherwise reliable).[3]

## III. STANDARD OF REVIEW

Claims of ineffective assistance of counsel present mixed questions of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *Head*, 323 Mich at 539. Clear error exists when we are "left with a definite and firm conviction that a mistake was made," *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019), while de novo review "means that we review the issues independently, with no required deference to the trial court," *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). But where no evidentiary hearing has been held, our review is limited to errors apparent from the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

We also generally review de novo questions of constitutional law, such as whether the trial court violated a defendant's right to a public trial or right to confront witnesses. *Vaughn*, 491 Mich at 649-650; *Jemison*, 505 Mich at 360. "When preserved, the erroneous denial of a defendant's public-trial right is considered a structural error." *Davis*, 509 Mich at 67. Preserved structural errors entitle the defendant to automatic reversal, regardless of how the error affected the trial, because such errors are "difficult to quantify" and "defy analysis by harmless-error standards." *Id*. (cleaned up). But the public-trial right can be waived, see *id*. at 64-65, as can the right of confrontation, see *People v Fackelman*, 489 Mich 515, 543; 802 NW2d 552 (2011).

Dewitt frames his argument as an ineffective-assistance claim based on recognition that his trial counsel's actions waived any claims that his public-trial and confrontation rights were

---

[3] Because the vitality of *Craig* is in question post-*Crawford*, our Supreme Court has confined *Craig* to its facts: "a child victim may testify against the accused by means of one-way video (or a similar *Craig*-type process) when the trial court finds, consistently with statutory authorization and through a case-specific showing of necessity, that the child needs special protection." *Jemison*, 505 Mich at 365.

violated. Waiver can occur "[w]hen defense counsel clearly expresses satisfaction with a trial court's decision. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). And a waiver eliminates any error, precluding appellate review. *People v Johnson*, 315 Mich App 163, 173; 889 NW2d 513 (2016). In this case, defense counsel stipulated to the courtroom closure and affirmatively stated that he had no objection to moving UH's location on the witness stand. Counsel's actions waived Dewitt's claims that he was deprived of his public-trial and confrontation rights, so there is no error to review.

## IV. ANALYSIS

This waiver of appellate review leaves Dewitt only with a viable claim of ineffective assistance of counsel. From this posture, we conclude that Dewitt has not established the requisite prejudice from counsel's allegedly deficient performance, so Dewitt is not entitled to relief. See *Strickland v Washington*, 466 US 668, 697; 104 S Ct 2052; 80 L Ed 2d 674 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Assuming without deciding that the trial court would *not* have allowed the witness accommodations had Dewitt's counsel objected,[4] Dewitt cannot establish the necessary prejudice to warrant a new trial. Dewitt's argument rests on the speculative foundation that the jury would have found UH less credible without the accommodations. As Dewitt frames it, the accommodations bolstered UH's credibility and "signaled to the jury that she was a victim in need of protection from a blameworthy defendant." The prosecution posits the opposite—that having UH testify in an open courtroom and face-to-face with Dewitt could have "paint[ed] her as a sympathetic witness worthy of belief" and perhaps resulted in an emotional response from UH that would have bolstered her credibility. This, too, requires speculation that we decline to draw. Even accepting Dewitt's theory as the more plausible one, he has not met his burden to establish a reasonable probability—one sufficient to undermine confidence in the result—that the jury would

---

[4] The parties contest this point, disagreeing on whether the accommodations were justified under MCL 600.2163a(18) and (19). These provisions allow the trial court to order special arrangements for a witness, such as excluding spectators from the courtroom or rearranging the witness stand "to protect the witness from directly viewing the defendant." MCL 600.2163a(19)(a) and (b). Before granting any such request, the trial court must consider several factors and must find that the requested accommodations are "necessary to protect the welfare of the witness." MCL 600.2163a(18). The trial court here had no opportunity to make the necessary findings of fact because of defense counsel's stipulation. See *Weaver v Massachusetts*, 582 US 286, 302; 137 S Ct 1899; 198 L Ed 2d 420 (2017) ("When a defendant first raises the closure in an ineffective-assistance claim, however, the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure."). Nor is it our role to try to rationalize the closure with findings that are not in the record. See *Veach*, 512 Mich at 852 ("Post-hoc rationalizations for courtroom closure made by an appellate court are not sufficient.").

-4-

have reached a different verdict had UH testified without accommodations. *Randolph*, 502 Mich at 9.

The United States Supreme Court's decision in *Weaver v Massachusetts*, 582 US 286; 137 S Ct 1899; 198 L Ed 2d 420 (2017), is instructive. That case involved a criminal defendant's claim that his attorney provided ineffective assistance by failing to object to a courtroom closure during jury selection which violated the defendant's public-trial right. *Id*. at 291-292. The Court confronted the difficult question of "what showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-counsel claim." *Id*. at 299. For purposes of the appeal, the Court assumed both that the closure violated the defendant's public-trial right and that defense counsel was ineffective by failing to object to the closure. *Id*. at 290, 304. As to prejudice, the Court explained that "not every public-trial violation will in fact lead to a fundamentally unfair trial," "[n]or can it be said that the failure to object to a public-trial violation always deprives the defendant of a reasonable probability of a different outcome." *Id*. at 300. Thus, the burden remains on the defendant to establish prejudice, even "when the government's main witness testifies in secret." *Id*. at 303.

In this case, as in *Weaver*, Dewitt has the burden to show a reasonable probability of a different outcome had UH testified in an open courtroom while directly facing Dewitt. As discussed, this case rested almost entirely on UH's credibility, and it is not reasonably probable that the jury would have found UH less credible without the courtroom accommodations. UH definitively testified about at least six acts of sexual penetration perpetrated by Dewitt during their multiple encounters. And despite being positioned differently than other witnesses throughout her testimony, UH did not avoid all direct contact with Dewitt because she identified him in the courtroom and described what he was wearing. There is no reason to believe that UH would have testified differently had some individuals been present in the gallery and had she directly faced Dewitt while on the witness stand. We therefore conclude that Dewitt cannot establish the necessary prejudice to succeed on his claim of ineffective assistance of counsel.

Lastly, Dewitt requests that this Court, at a minimum, remand for an evidentiary hearing to develop the record as to why trial counsel agreed to the requested accommodations. Because our prejudice determination can be made on the existing record, it is unnecessary to do so. See MCR 7.211(C)(1)(a)(*ii*) (explaining that a motion to remand must show "that development of a factual record is required for appellate consideration of the issue").

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett

-5-